OPINION
{¶ 1} Defendant-appellant, Mark Conese, appeals from his conviction and sentence for Soliciting or Receiving Improper Compensation. He contends that the conviction is not supported by the evidence. Specifically, he contends that for him to be convicted of having "coerce[d] any contribution," in violation of R.C. 2921.43(C), there must be evidence that a contribution was made as a result of coercion. We agree. Because there is no evidence that a contribution resulted from any coercive act on Conese's part, the judgment of the trial court is reversed, and Conese is ordered discharged.
 I {¶ 2} In February, 2000, Conese was the Central Committee Chairman of the Butler County Democratic Party, and a member of the Board of Elections. During that time period, the Butler County Democratic Party was experiencing financial difficulties. Conese and another board member decided to meet with an employee of the Board of Elections, Brent Dixon, in order to request Dixon to donate more money to the Party.
 {¶ 3} Dixon was, at that time, one of the Board of Election's Special Assistants. The Special Assistant position is considered a "patronage" job, in that the employee serves at the pleasure of the political party recommending the employee. Dixon had held the Democratic Party's Special Assistant position for nine years. Dixon was paid approximately $6,000 per year and was provided with retirement and health insurance benefits.
 {¶ 4} Dixon was concerned that two high-ranking Democratic officials wanted to meet with him, only, and with no other Democratic employees. He decided to tape record both his telephone conversation with Conese, during which they arranged the meeting, and the actual meeting. During the telephone conversation, Conese stated that he wanted Dixon to "stay on with the Board." He also said that, "[w]e want to talk to you about what we want to do and how we want to do it."
 {¶ 5} On March 1, 2000, Dixon met with Conese and the other Board member at Democratic Party Headquarters. Conese told Dixon that the Party was in financial trouble, and that the party needed him to double his contributions.[1] Dixon reacted with hostility to the request, and felt that Conese had insulted him. Conese told him that he was not being insulted. Conese also reminded Dixon that his position with the Board was a "patronage" job, that he owed his employment to the Party, and that he served at the Party's pleasure. Conese also explained that when the Board hired a new Special Assistant, that person would be fired if he did not contribute his entire salary to the Party.[2] When Dixon asked whether he would lose his job, he was informed that it was a "possibility" if he did not make the donation. Conese also stated, "I don't want to be the person that fires ya [sic], and I don't want to threaten you because I want you to continue in that role."
 {¶ 6} At the primary election following the meeting, Dixon switched his registration from the Democratic Party to the Republican Party and was immediately hired as one of the Republican Special Assistants to the Board. He never made the donation requested by Conese.
 {¶ 7} Thereafter, Conese was charged with one count of Misconduct of a Member or Employee of a Board of Elections, in violation of R.C.3599.16(F), and one count of Soliciting or Receiving Improper Compensation, in violation of R.C. 2921.43(C). Following trial, the jury could not reach a verdict on the Misconduct count, and the trial court then sustained a motion for judgment of acquittal on that count. Conese moved for judgment of acquittal, pursuant to Crim.R. 29, with regard to the Soliciting or Receiving charge, which the trial court overruled. The jury found Conese guilty of Soliciting or Receiving Improper Compensation, and Conese was sentenced accordingly. From his conviction and sentence, Conese appeals.
 II {¶ 8} Conese's First Assignment of Error is as follows:
 {¶ 9} "The trial court erred to the prejudice of defendant-appellant when it refused to dismiss Count II of the indictment."
 {¶ 10} Conese contends that the State did not present sufficient evidence to support a conviction for Soliciting or Receiving Improper Compensation and that the trial court therefore erred by denying his Crim.R. 29 motion for judgment of acquittal. Specifically, he argues that because Dixon never made the requested contribution to the Party, the State failed to demonstrate that Conese "coerce[d] a contribution."
 {¶ 11} "Motions for acquittal pursuant to Crim.R.29 address the sufficiency of the State's evidence." State v. Smith (Nov. 1, 2000), Montgomery App. No 19230, citation omitted. "Under Crim.R.29, a motion for acquittal may only be granted if the evidence is insufficient to sustain a conviction for the offense charged." Id., citation omitted. "[P]ursuant to Crim.R.29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id., citation omitted. "In reviewing the court's determination, we must construe the evidence in favor of the State." Id., citation omitted.
 {¶ 12} R.C. 2921.43 provides in pertinent part:
 {¶ 13} "(C) No person for the benefit of a political party, campaign committee, legislative campaign fund, political action committee, or political contributing entity shall coerce any contribution in consideration of either of the following:
 {¶ 14} "(1) Appointing or securing, maintaining, or renewing the appointment of any person to any public office, employment, or agency;
 {¶ 15} "(2) Preferring, or maintaining the status of, any public employee with respect to compensation, duties, placement, location, promotion, or other material aspects of employment."
 {¶ 16} Conese contends that in order to show that he coerced a contribution, the State was required to demonstrate that Dixon actually made the requested contribution. Conversely, the State argues that because other portions of the statute merely require solicitation or receipt,[3] the portion of the statute at issue cannot be construed to require an actual contribution from the victim in response to the coercion. Neither party cites, and we cannot find, any prior decisions on this point. Therefore, we must determine whether, by the use of the phrase "coerce any contribution," the General Assembly intended to require, as an element of the offense, that the victim actually make a contribution as a result of coercion.
 {¶ 17} The word "coerce" is not defined in the statute. Words used in a statute are to be given their plain and ordinary meaning unless otherwise indicated. Ohio Assn. of Pub. School Emp. v. Twin Valley LocalSchool Dist. Bd. of Edn. (1983), 6 Ohio St.3d 178, 181. Furthermore, R.C. 1.42 provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." "Coerce" is defined as "to enforce or bring about by force or threat" and "to compel to an act or choice." Webster's Ninth New Collegiate Dictionary (1988), p. 256. "Compel" means "to cause to do or occur by overwhelming pressure." Id. at 268.
 {¶ 18} These definitions indicate that the plain and ordinary meaning of "coerce" requires that the action the actor intends to cause, in this case a contribution to a political party, actually must occur before coercion can be found. We find that, based upon the definition of "coerce" and our reading of the statutory section, the construction of the statute urged by Conese is more persuasive. We note that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). Thus, even if the construction urged by Conese were merely a reasonable construction, he would be entitled to that construction.
 {¶ 19} We conclude that the State failed to prove an essential element of the offense charged — the making of a contribution to a political party as a result of Conese's pressure — so that the conviction is not supported by sufficient evidence. Conese's First Assignment of Error is sustained.
 III {¶ 20} Conese's Second and Third Assignments of Error are as follows:
 {¶ 21} "The trial court erred to the prejudice of defendant-appellant when it excluded his expert from testifying.
 {¶ 22} "The trial court erred to the prejudice of defendant-appellant when it refused to grant a mistrial."
 {¶ 23} Conese contends that the trial court improperly excluded the testimony of his language expert, and that it erred in denying his request for a mistrial when the State cross-examined Conese regarding that expert's report.
 {¶ 24} We need not address these arguments, since they have been rendered moot by our disposition of the First Assignment of Error. Therefore, the Second and Third Assignments of Error are overruled as moot.
 IV {¶ 25} Conese's First Assignment of Error having been sustained, the judgment of the trial court is reversed, and Conese is ordered discharged.
WOLFF and YOUNG., JJ., concur.
Fain, J., Wolff, J., and Young, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), of the Ohio Constitution.
[1] The record reveals that Conese was aware that Dixon donated $200 every two weeks, and that by doubling his donation he would be paying his entire after-tax salary to the Party.
[2] At the time, the Board was preparing to hire one additional Special Assistant for each political party.
[3] R.C. 2921.43(A).